**UNITED TELEPHONE COMPANY OF OHIO, Appellee,**

v.

**C.J. MAHAN CONSTRUCTION CO., Appellant.**

[Cite as *United Tel. Co. of Ohio v. C.J. Mahan Constr. Co.* (1989), 63 Ohio App.3d 437.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–823.
Decided June 29, 1989.

438

*Lane, Alton & Horst, William L. Millard* and *John A. Fiocca, Jr.,* for appellee.

*Mullisor & Nobil* and *Roger L. Sabo,* for appellant.

REILLY, Judge.

This is an appeal from a judgment of the Franklin County Municipal Court.

W.H. Blausey, Inc. ("Blausey") submitted a bid to the Ohio Department of Transportation ("ODOT") for improvements to U.S. Route 33 in Union City, Ohio. As part of this project, Blausey subcontracted with defendant, C.J. Mahan Construction Co., wherein Blausey would be responsible for moving the earth and paving. Defendant was accountable for constructing the bridges where Route 33 would either cross existing roads or existing roads would cross Route 33. The project plan advised bidders on the Route 33 project that certain utility facilities would not be cleared from the construction area.

Blausey, as the highway contractor, called plaintiff, United Telephone Company of Ohio, in August 1986 to move an existing cable so that Blausey could commence excavation. After a meeting with Blausey's project superintendent, plaintiff determined that it could place its permanent cable where designated by the plans, and that it would be necessary to put a temporary line under the roadway. Since footers were being placed for a bridge abutment wall, plaintiff was instructed to route its temporary line in an area away from the excavation for the footer.

Defendant began excavating for the footers on October 23, 1986. Prior to this time, defendant did not inform plaintiff verbally or in writing of its intention to excavate. While in the process of excavating, defendant encountered an underground telephone utility line. Defendant maintains that it shut down its operation for two hours while efforts were made to determine whether the cable was operative. Defendant's representatives spoke with Blausey's plan supervisor who said that the temporary line was at least ten feet away from where they were currently excavating. When defendant recommenced work, the utility line, which was the temporary line placed by plaintiff, was severed.

Plaintiff charged defendant for the repair and relocation of the utility line. Defendant refused to pay. It maintained that the cable was to have been relocated by plaintiff and that ODOT's personnel directed defendant to remove the cable as it was dead.

The court determined that defendant acted negligently in cutting the telephone cable belonging to plaintiff and in not informing plaintiff of the intention to excavate in that particular area. The court noted that a contract to excavate bears the risk of encountering utility cables if it proceeds without considering the effect of services. Damages were awarded to plaintiff in the amount of $360.45.

Defendant timely appealed, asserting the following assignments of error:

"I. The municipal court erred when it concluded that defendant, C.J. Mahan Construction Company, was a subcontractor of W.H. Blausey, Inc., on a public construction project.

"II. The Municipal Court erred when it concluded that the plaintiff, United Telephone Company, was not notified by the prime contractor on a public construction project to relocate its utility lines, while at the same time finding the plaintiff moved its utility lines and temporarily relocated them.

"III. The Municipal Court erred when it failed to find plaintiff solely responsible for any subsequent damage to its temporary utility line when it improperly placed that temporary line after notification by the contractor on a public construction project.

"IV. The Municipal Court erred in failing to consider the Ohio Revised Code Section 153.64 as to obligations between the parties on public construction projects with regard to utilities.

"V. The Municipal Court erred when it awarded damages to plaintiff, without sufficient proof thereof.

"VI. The Municipal Court erred when it failed to consider, in awarding damages, the additional costs that would have been incurred by plaintiff to have had to once again relocate a utility line that was improperly placed by it in the construction area for the abutment wall of a bridge.

"VII. The Municipal Court erred in failing to award damages to defendant contractor for costs occasioned by improper relocation of a utility line."

Defendant's first, second, third and fourth assignments of error are interrelated and considered together.

■ Defendant contends that it was part of a joint venture with Blausey on the Route 33 project and seeks application of R.C. 153.64 to the facts of this case. This court, however, finds that defendant was a subcontractor for Blausey.

R.C. 153.64 was enacted in 1982 to address the protection of underground utility facilities during construction of public improvements. In part, this section sets forth various rights and responsibilities among public authorities, contractors, and underground utility owners. This statute relieves a contractor from liability to the owners of an underground utility, if such utility is damaged during the course of the contractor's work, if the contractor has given at least two days' notice to the owners of the underground utility of the contractor's intention to commence construction operations in the particular area where the underground utility is located. The protection afforded a contractor under R.C. 153.64 is limited, however, to only those contractors " *

* * to whom a contract for public improvement is awarded." R.C. 153.64(C). Here, Blausey was granted a contract with ODOT involving the improvements to Route 33. Thus, Blausey is considered a contractor.

Although defendant maintains that it and Blausey were "both equal prime contractors on the project," and that they "had a direct contract as a joint venture with the Department [ODOT]," the evidence does not support this allegation. There was no contract introduced between defendant and ODOT making defendant a contractor. Moreover, according to William R. Fisher, plaintiff's outside plan engineer, plaintiff was under direction from ODOT and was expected to work with Blausey. Therefore, considering that there was no contract between defendant and ODOT introduced at trial and based upon the trial testimony and exhibits, the trial court reasonably concluded that defendant was a subcontractor. Hence, R.C. 153.64 was not applicable in this case.

Even assuming that R.C. 153.64 was applicable, the evidence was that defendant never gave plaintiff the required forty-eight hours' notice of intention to excavate. Defendant maintains that the notification given by Blausey to plaintiff in August 1986, requesting that plaintiff install a temporary cable, constitutes sufficient notice.

■ Pursuant to R.C. 153.64, as indicated above, it is necessary for the contractor who is doing the excavating to provide notice to the utility owner at least forty-eight hours prior to excavation. Although Blausey notified plaintiff in August 1986 regarding installation of a temporary cable, this notice was not valid approximately two months later, especially when relocation of that temporary cable was negotiated only between Blausey and plaintiff. Defendant did not notify plaintiff of its intentions to excavate at any time. Thus, even if defendant had been an equal prime contractor, it would have been in violation of R.C. 153.64.

■ The evidence shows that defendant had actual notice of the existence of the cable in the area they were excavating. Defendant stopped work for two hours in an effort to determine whether the cable was operable. Nevertheless, at no time during that two-hour period did defendant attempt to contact plaintiff regarding the status of the cable. Defendant spoke only with Blausey and ODOT representatives. Thus, defendant mistakenly relied upon the statements of a Blausey representative as to plaintiff's location of the temporary cable.

Defendants' first, second, third and fourth assignments of error are not well-taken.

■ Defendant's fifth and sixth assignments of error are also interrelated, and considered together. In essence, defendant contends that plaintiff failed to prove its damages at trial.

The proper measure of damages in this case is the cost of reestablishing telephone service. Plaintiff's witness testified at trial that the cost of reestablishing service was $360.45. This amount represented the labor costs in splicing the cut cable together and was determined by multiplying the loaded labor rate times six and one-half hours of repair time. Although the witness stated that the hourly labor rate was $52.45, the correct labor rate was included in interrogatories as $55.453 per hour.

Plaintiff's witness qualified his response in providing the actual labor rate, but stated that he believed that the $52.45 labor figure to be correct, although he gave the correct total amount of damages of $360.45. The error was harmless and, under the circumstances, the court was justified in making the $360.45 award.

Thus, defendant's fifth and sixth assignments of error are not well-taken.

■ Defendant's seventh assignment of error is that as a result of plaintiff's negligence in relocating the temporary cable, defendant was damaged in the amount of $250. Defendant relies upon the "4a Note" issued to bidders on the U.S. Route 33 project by ODOT. The "4a Note" advises bidders to the project that "certain utility facilities will remain or be relocated within the construction limits of the project." The note identifies the particular utility, its location, and its planned relocation within the project limits. As to plaintiff, the note states:

"*UNITED TELEPHONE COMPANY OF OHIO*

"The Company has buried cable on county Road 149 (Bear Swamp Road) that will be relocated around and outside the construction limits. The Company will bury two 4 inch PVC pipes on the east side of County Road 149 in County right of way crossing under the overpass at station 228+03 at proposed USR–33. The Company will also bury two 4 inch PVC pipes crossing under proposed USR–33 at station 269+02.

"If the work is not completed by sale date the Company will work in conjunction with the highway contractor."

The "4a Note" pertains only to the highway contractor, who in this case is Blausey. It does not include a private cause of action. In any event, plaintiff's duty would be to the highway contractor, Blausey. There was no contract between defendant and plaintiff.

Defendant cites *Visintine & Co. v. New York, Chicago & St. Louis R.R. Co.* (1959), 169 Ohio St. 505, 9 O.O.2d 4, 160 N.E.2d 311, as controlling. The

decision in *Visintine,* however, does not include a theory of negligence. In *Visintine,* the state of Ohio instituted a program for grade-crossing elimination. Thus, the state entered into a contract with Visintine, a building contractor. A separate construction contract was entered into between the city of Fostoria and defendant-railroad company. There was no separate agreement or contractual relationship between Visintine, the plaintiff, and the railroad. The court held that Visintine's complaint stated a cause of action sufficient to survive a demurrer. Visintine's complaint sought to recover against the railroad upon a theory that Visintine was a third-party beneficiary to the contract between the state of Ohio and the railroad company.

This case is distinguishable. The only contract that existed in this case with ODOT was with Blausey. Defendant was a subcontractor to Blausey. There was no contract between plaintiff and ODOT upon which defendant could claim to be a third-party beneficiary.

Defendant's seventh assignment of error is not well-taken.

For the foregoing reasons, defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCORMAC, P.J., and STRAUSBAUGH, J., concur.