118

**COLUMBIA GAS OF OHIO, INC., Plaintiff,**

v.

**COLUMBUS ASPHALT PAVING, INC., Defendant and Third–Party Plaintiff;**

**Westerville et al., Third Party Defendants.**

Franklin County Municipal Court,
Columbus, Ohio.

Nos. 2004 CVF 031877, 2004 CVF 052078 and 2005 CVE 019575.

Decided Aug. 17, 2006.

Daniel J. Igoe, Stephen L. Hebenstreit, and Andrew J. Sonderman, for plaintiff.

Donald B. Leach Jr. and Priya J. Bathija, for defendant.

Kyle J. Stroh and Michael K. Fultz, for third-party defendant city of Westerville.

DORRIAN, Judge.

{¶ 1} For the reasons outlined below, the court denies the motion for summary judgment of third-party defendant city of Westerville.

## I. Summary of Complaint, Counterclaim, and Third Party Complaints

{¶ 2} Columbia Gas of Ohio's original complaint and amended complaint against Columbus Asphalt Paving ("CAP") are summarized in this court's entry and decision filed October 31, 2005. CAP's original counterclaim and amended counterclaim against Columbia Gas are summarized in this court's entry and decision filed October 31, 2005. In the same entry and decision, this court dismissed CAP's counterclaim against Columbia Gas. CAP's third-party complaint against third-party defendant Reliant Services, L.L.C. ("Reliant"), is summarized in this court's entry and decision filed October 31, 2005. In the same entry and decision, this court dismissed CAP's third-party complaint against Reliant.

{¶ 3} On January 6, 2006, Columbia Gas, CAP, and third-party defendant city of Westerville filed a joint motion to join case Nos. 04 CVF 031877, 04 CVF 052078, and 05 CVE 019575. The city is a third-party defendant in the latter two cases. On January 12, 2006, this court granted the joint motion.

{¶ 4} The third-party complaints that CAP filed against the city in case Nos. 04 CVF 052078 and 05 CVE 019575 allege:

In the event that CAP is held liable to Columbia Gas in this action, the city is liable in full to CAP for indemnification.

In the event that CAP is held liable to Columbia Gas in this action, the city is liable to CAP for contribution.

## II. Summary of Westerville Motions

{¶ 5} On March 20, 2006, the city filed a motion for judgment on the pleadings, moving the court to grant judgment in favor of the city and against CAP on CAP's counterclaim against the city, arguing that:

The city is immune from CAP's claims for money damages by operation of R.C. 2744.02(A)(1).

The five exceptions to R.C. 2744.02(A)(1), provided in R.C. 2744.02(B), do not apply.

As the five exceptions do not apply, it is not necessary to determine whether any defense in R.C. 2744.03 reinstitutes immunity.

{¶ 6} In its original answers to the third-party complaints, the city did not specifically raise immunity pursuant to R.C. 2744.02 as an affirmative defense. After careful consideration, the court granted the city leave to amend its answers to include immunity as an affirmative defense. Further, after careful consideration, the court denied the city's motion for judgment on the pleadings.

{¶ 7} On March 20, 2006, the city also filed a motion for summary judgment, moving the court to grant judgment in favor of the city and against CAP on CAP's counterclaim against the city arguing that:

The city is not liable because CAP waived its right to obtain utility information on the city plans when it expressly agreed to perform the work without the city plans or without utility information on the city plans. CAP is permitted to waive its right to obtain utility information from the city as required by R.C. 153.64 because Ohio law permits waiver of personal rights accorded by statute.

The city is not liable because it met all of its obligations under R.C. 153.64(B). It is not the city's responsibility for "stak[ing], mark[ing] or otherwise designat[ing] the location of the underground utility facilities in the construction area in such a manner as to indicate their course together with the approximate depth at which they were installed," pursuant to R.C. 153.64(C), nor is it the city's responsibility for overseeing CAP's employees once they have "actual notice of the existence of the * * * utilit[ies]" pursuant to R.C. 153.64(D). These responsibilities fall to Columbia Gas and CAP respectively, and therefore the city is not liable.

{¶ 8} On April 7, 2006, Columbia Gas filed its combined memorandum in opposition to Westerville's motion for summary judgment and judgment on the pleadings, and CAP filed its combined memorandum in opposition to Westerville's motions for summary judgment and judgment on the pleadings. Columbia Gas argues that the city's obligations under R.C. 153.64 are mandatory and cannot be waived. Columbia Gas further argues that R.C. 153.64 is related to public safety, and therefore, as a matter of public policy, duties relating to public safety can not be waived. CAP argues that regardless of whether CAP could waive the rights under R.C. 153.64(B), it did not take affirmative steps to waive its rights to obtain utility information from the city. Both Columbia Gas and CAP argue that the city did not meet its obligations under R.C. 153.64(B).

## III. Standard for Motion for Summary Judgment

{¶ 9} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kaeppner v. Leading Mgt. Inc.*, 10th Dist. No. 05AP–1324, 2006-Ohio-3588, 2006 WL 1932327. Accordingly, summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the

nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Id. at ¶ 7, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 10} " '[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' " Id. at ¶ 8, quoting *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence of the types listed in Civ.R.56(C), showing that there is a genuine issue for trial. Id. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. Id., citing *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 11} The court will now apply the aforementioned standard to the city's motion for summary judgment.

## IV. The Provisions of R.C. 153.64 Applicable to the City Are Waivable.

{¶ 12} The first question this court must consider is whether the provisions of R.C. 153.64 applicable to the city are waivable.

{¶ 13} To support its argument that CAP waived its right to receive utility information from the city, the city points to *E. Ohio Gas Co. v. Kenmore Constr. Co., Inc.* (March 28, 2001), 9th Dist. Nos. 19567, 19790, 2001 WL 302818, as precedent establishing that a party may waive its rights under R.C. 153.64 based on its conduct. In *E. Ohio,* the Ninth District Court of Appeals stated:

Kenmore and East Ohio contend that the magistrate's application of waiver violates public policy. Under Ohio law, a person may not waive rights or privileges conferred by statute if such waiver would constitute a violation of public policy. *Hess v. Akron* (1937), 132 Ohio St. 305 [8 O.O. 76, 7 N.E.2d 411]. Kenmore argues that public policy requires performance of statutory obligations that, if not performed, could result in serious bodily harm or death to members of the general public. While Kenmore has correctly stated the law, there is nothing here to support a contention that the statutes at issue were enacted for the protection of the general public. Rather, it appears from the captions, as well as from various provisions of the statutes, that the acts were promulgated simply for the protection of underground utility facilities.

Since R.C. 153.64 and R.C. 3781.25 et seq. were enacted for the protection of underground utility facilities, the benefits conferred are personal rights belonging to the utility owners of the facilities and to excavators whose work in the vicinity of such facilities may be interrupted if the facilities are disturbed.

Both have a personal interest in the protection of those facilities. Ohio law permits waiver of one's personal rights accorded by statute. *State ex rel. Chuvalas v. Tompkins* (1998), 83 Ohio St.3d 171, 173 [699 N.E.2d 58]. Thus, it is not violative of public policy to waive such personal rights conferred by statute. *East Ohio Gas Co. v. Kenmore Constr. Co., Inc.*

{¶ 14} In the CAP memorandum in opposition, CAP refers this court to the Tenth District Court of Appeals decision in *United Tel. Co. of Ohio v. C.J. Mahan Constr. Co.* (1989), 63 Ohio App.3d 437, 440, 579 N.E.2d 250, which states, "R.C. 153.64 was enacted in 1982 to address the protection of underground utility facilities during construction of public improvements." CAP then states, in footnote 19, that it agrees with Columbia Gas's position that a waiver of CAP's rights under R.C. 153.64 would violate public policy.

{¶ 15} Columbia Gas's position, articulated in the Columbia Gas memorandum in opposition, is that R.C. 153.64 is related to public safety, that its provisions cannot be waived, and that any attempt to do so would contravene public policy. Columbia Gas states that the legislation is clearly aimed at safety concerns, not just the cost of damage to a utility facility or the lost productivity of a contractor. Columbia Gas also argues that the statute imposes duties rather than confers rights.

{¶ 16} The city and the *E. Ohio* court have framed the issue of waiver as one involving rights or claims. Columbia Gas, however, has framed the issue as one involving duties. Black's Law Dictionary defines "duty" as a "legal or moral obligation." "An obligation that one has by law or contract. Obligation to conform to legal standard of reasonable conduct in light of apparent risk.* * * In its use in jurisprudence, this word is the correlative of right. Thus, wherever there exists a right in any person, there also rests a corresponding duty upon some other person or upon all persons generally." (Emphasis sic.) Black's Law Dictionary (6th Ed.1990) 505. With this definition in mind, it appears that both the city and Columbia Gas have framed the issue correctly. Pursuant to R.C. 153.64, where CAP and Columbia Gas have rights, the city has a corresponding duty.

{¶ 17} Therefore, the court will consider the issue of waiver as one involving rights or claims as suggested by the city and the *E. Ohio* court. Although the Ninth District Court of Appeals in *E. Ohio* and the Tenth District Court of Appeals in *United Tel.* have said that R.C. 153.64 was enacted for the purpose of protecting underground utility facilities, this court finds it logical to assume, however, that the statute has a dual purpose. Not only was R.C. 153.64 enacted for the purpose of protecting underground utility facilities, it was also enacted for the purpose of protecting the public safety—in particular, the safety of construction workers and persons living, working, or playing near an excava-

tion location. Columbia Gas suggests that because the statute has a public-safety purpose, waiver is not permitted as a matter of public policy. However, the language of R.C. 153.64 is not clear, and the legislative intent of R.C. 153.64 seems to suggest otherwise.

{¶ 18} When interpreting a statute, a court must first determine whether the words used convey a clear and definite meaning. When statutory language is subject to more than one reasonable interpretation, however, it is ambiguous and the court must give effect to the legislature's intent when construing that language. A court may look to a host of factors, including the purpose of the statute, to determine legislative intent. *State v. Reedy*, 10th Dist. No. 05AP–501, 2006-Ohio-1212, 2006 WL 648861, citing *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68; *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 724 N.E.2d 771; and *Family Medicine Found., Inc. v. Bright*, 96 Ohio St.3d 183, 2002-Ohio-4034, 772 N.E.2d 1177. R.C. 149 states that if a statute is ambiguous, the court, in determining legislative intent, may consider among other matters the legislative history of a statute.

{¶ 19} This court finds that the statutory language of R.C. 153.64 is ambiguous regarding the issue of whether its provisions may be waived. Therefore, the court will turn to the legislative history of R.C. 153.64 for assistance in determining the legislature's intent.

{¶ 20} H.B. 538, which first enacted R.C. 153.64, when introduced, contained a division (F), which stated: "Any waiver or modification of, or any attempt to waive, delete, change, or affect the application of this section, including by any condition in any bid documents, plans, or specifications made a part of the invitation for bids, is against public policy and is void." The final enacted version of H.B. 538, however, and the current version of R.C. 153.64, do not contain this language.[1] It appears, therefore, that the General Assembly contemplated, but ultimately rejected, the idea that waiver of the provisions of R.C. 153.64 is against public policy and void.

---

1. The ultimately enacted and currently in effect version of R.C. 153.64 contain the following language in division (D): "The public authority shall not make as a requirement of any contract for public improvement any change in responsibilities between the public authority and the owners of the underground utility facilities in connection with damage, injury, or loss to any property in connection with underground utility facilities." As explained in the entry and order filed August 9, 2006, denying the city's motion for judgment on the pleadings, this court interprets this language in division (D) as relating to responsibility for damages, injury, or loss to property, whereas the rejected division (F) in H.B. 538, as introduced, seems to address more broadly all the duties outlined in R.C. 153.64. Further, the rejected division (F) specifically addresses the question of waiver as being against public policy and void, whereas division (D), currently in effect, does not.

{¶ 21} Therefore, in consideration of the Tenth District Court of Appeals' determination that R.C. 153.64 was enacted for the protection of underground utility facilities during construction of public improvements and the legislative history of H.B. 538, the court finds that the provisions of R.C. 153.64 are in fact waivable.

## V. There Exists a Genuine Issue of Material Fact regarding whether the Applicable Provisions of R.C. 153.64 Were Waived

{¶ 22} As the court has determined that the provisions of R.C. 153.64 are waivable, it must now consider whether in fact the provisions were waived.

{¶ 23} The Tenth District Court of Appeals has ruled: " 'As a general rule, the doctrine of waiver is applicable to all personal rights and privileges, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided that the waiver does not violate public policy.' *Sanitary Commercial Servs., Inc. v. Shank* (1991), 57 Ohio St.3d 178, 180 [566 N.E.2d 1215], * * * quoting *State ex rel. Hess v. Akron* (1937), 132 Ohio St. 305, 307 [8 O.O. 76] * * *. 'A waiver is a voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts.' *N. Olmsted v. Eliza Jennings, Inc.* (1993), 91 Ohio App.3d 173, 180 [631 N.E.2d 1130] * * *. Moreover, '[a] party may voluntarily relinquish a known right through words or by conduct.' Id. * * * Mere silence, however, does not amount to waiver where a party is not under a duty to speak. *Allenbaugh v. Canton* (1940), 137 Ohio St. 128, 133 [17 O.O. 473, 28 N.E.2d 354] * * *. 'Before silence will be construed as a waiver of rights expressly conferred by statute, the duty to speak must be imperative, and the silence must clearly indicate an intent to waive, or be maintained under such circumstances that equity will impute thereto such intent. Where, however, the silence is, under the circumstances, susceptible of more than one interpretation, the waiver will not be inferred therefrom.' Id." *Hightower v. Hightower*, 10th Dist. No. 02AP–37, 2002-Ohio-5488, 2002 WL 31262059, ¶ 28, quoting *Newsom v. Newsom* (Mar. 21, 2002), Franklin App. No. 01AP–686, 2002 WL 433578.

{¶ 24} The city argues that the facts in this case are analogous to the fact in the *E. Ohio* case. In the case at bar, CAP executed a contract with the city with the following language: "PLANS prepared by the City numbered n/a dated n/a and revised n/a, 200___." According to the city, CAP did not request any plans. Susan Banbury, City Engineer, stated that "[s]ince street resurfacing is routine maintenance work, the common practice between CAP and the City is that the City does not provide any plans for such street resurfacing projects. Instead CAP takes responsibility for obtaining information concerning the location of any utility lines. The City not providing plans to CAP is standard practice between the parties as is evidenced by the contracts dated 2003, 2004 and 2005 wherein

under Section 5(D) relating to plans prepared by the City, all references therein state 'n/a' ". Finally, the city argues that CAP reaffirmed its waiver when it struck a gas line on July 13, 2004, on July 15, 2004, on August 6, 2004, and on August 13, 2004, and each time continued with the project without requesting plans and specifications. The city claims that CAP's failure to request plans and specifications constituted a waiver.

{¶ 25} CAP differentiates the case at bar from the *E. Ohio* case by stating that it did not take affirmative steps to waive its rights to obtain utility info on the city plans as the contractor did in *E. Ohio*. CAP focuses on the definition of "waiver" in *Hightower* and in particular on the Tenth District Court of Appeals' emphasis on intent. CAP states that it had no intention of relinquishing its right to receive utility information from the city. Dave Power, CAP President, states, "At one point while CAP was performing work on the Project, a representative from Columbia Gas verbally indicated to me that the City did not contact the Ohio Utility Protection Service ('OUPS') or Columbia Gas to determine existence and location of the underground utility facilities." He also stated, "[A]t no time in its relationship with the City did CAP intend to release the City from its responsibilities pursuant to R.C. 153.64, [and] [f]urther CAP did not intend to give up its right to obtain utility information on the plans by entering into the Contract."

{¶ 26} The court finds that CAP did not have full knowledge of all the facts, since it was unaware that CAP did not contact OUPS or Columbia Gas regarding the existence of underground utility facilities at the time it signed its contract with the city. Further, it appears there exists a genuine issue of material fact regarding whether CAP intended to waive the provisions of R.C. 153.64 applicable to the city.

{¶ 27} Finally, Columbia Gas states that it was not notified in advance of the city's project, but rather was contacted by the city after the project was bid. The city told Columbia Gas that no plans were being provided. Columbia Gas's Project Engineer, Scott E. Russ, "expressed concern to [the city's representative] Mr. Kessler after Mr. Kessler indicated that the street improvements would involve some cuts of approximately 18 inches because the project was in an older section of town where the gas main lines and gas service lines may have been installed at more shallow depth than are now used in current practice."

{¶ 28} If, as the city suggests, this court is to consider waiver in the context of rights conferred by R.C. 153.64 for the purpose of protecting underground utility facilities, it must ask to whom are the rights conferred. The *E. Ohio* court states that "the benefits conferred [by R.C. 153.64] are personal rights belonging to the utility owners of the facilities and to excavators * * *." (Emphasis added.) Id. at *7. CAP does not own the underground utility facilities. Therefore, it is not logical for CAP to be the ultimate decider

regarding waiver of a right conferred for the purpose of protecting underground utility facilities. Rather, Columbia Gas, the owner of the underground utility facilities, should also be involved in any decision regarding waiver. Clearly, Columbia Gas was not involved as they were not notified in advance of the project and expressed concern to the city when notified that no plans were being provided to CAP by the city. Therefore, the court finds there exists a genuine issue of material fact regarding whether Columbia Gas waived the provisions of R.C. 153.64 applicable to the city.

## VI. There Exists a Genuine Issue of Material Fact regarding whether the City Complied with the Applicable Provisions of R.C. 153.64

{¶ 29} As the court has determined that there exists a genuine issue of material fact regarding whether the applicable provisions of R.C. 153.64 were waived, the court must now consider whether the city complied with the applicable provisions of R.C. 153.64. In order to make this determination, the court must first consider exactly what provisions are applicable to the city. The city argues that the only duty it owed to Columbia Gas is one of notice that a contract has been awarded that may involve underground utilities. The city states that its only duty to the contractor CAP is to provide notice regarding (1) who are the utility owners and (2) where the utility owners indicate that utility lines are located. According to the city, it has no independent responsibility for determining the exact or even approximate location of the utilities or the depth of those utilities, other than to illustrate on any plans that are prepared from the information received from the utility company.

{¶ 30} R.C. 153.64(B) is very clear and unambiguous regarding the obligations it imposes on the city. First, "prior to preparing plans and specifications, [the city] shall contact the registered underground utility protection services and the owners of underground utility facilities that are not members of a registered underground utility protection service for the existence and location of all underground utility facilities within the construction area." Second, the city "shall include, in the plans and specifications * * *, the identity and location of the existing underground utility facilities located in the construction area as provided to the [city] by the owner of the underground utility facility and the name, address, and telephone number of each owner of any underground utility facilities in the construction area that does not subscribe to a registered underground utility protection service." Third, prior to the start of construction, the city shall negotiate or arrange with the owners of the underground utility facilities any anticipated temporary or permanent relocation of underground utility facilities it deems necessary. Fourth, the city, "within ten calendar days after award of a contract for a public improvement, shall notify in writing all owners of underground utility facilities known to be located in the construction

area of the public improvement of the name and address of the contractor to whom the contract for the public improvement was awarded."

{¶ 31} The city concedes that it did not provide plans for the project to CAP. However, it argues that even if those plans had been provided, the plans would only reiterate information regarding "the identity and location of * * * utility facilities located in the construction area as provided to the [city] by the [utility] owner * * *." The city asserts that damage to the gas lines would have occurred regardless of whether the city prepared the plans and specifications required by R.C. 153.64(B).

{¶ 32} CAP states that although Columbia Gas was aware of CAP performing work on the project, the city did not make Columbia Gas aware. Rather, CAP and OUPS made Columbia Gas aware. Columbia Gas argues that the city's responsibility is much more than to merely initiate the exchange of information between CAP and Columbia Gas. Columbia Gas asserts, "Sub paragraph (B) requires that Westerville contact the utility. If the utility is a member of a registered protection service, this is accomplished by calling OUPS prior to preparing plans and specifications. Westerville did not call OUPS prior to preparing plans and specifications and makes no claim that it did so." The affidavit of Scott E. Russ supports Columbia Gas's contention that much more is contemplated and accomplished when a public authority contacts OUPS and utility owners prior to preparing plans and specifications.

{¶ 33} With this in mind, the court finds that there exists a genuine issue of material fact regarding whether the city complied with the applicable provisions of R.C. 153.64.

## VII. Conclusion

{¶ 34} The court finds that the provisions of R.C. 153.64 are waivable. However, the court also finds that there exist genuine issues of material fact regarding whether the provisions of R.C. 153.64 applicable to the city were in fact waived by CAP and Columbia Gas and whether the city complied with the applicable provisions of R.C. 153.64.

{¶ 35} Therefore, this court denies the motion for summary judgment of third-party defendant city of Westerville.

{¶ 36} The parties are to appear for previously scheduled pretrial on August 17, 2006, at 9:00 a.m. The above order does not constitute a final, appealable order within the meaning of Civ. R. 54(A).

So ordered.