**BOYD, Appellant,**

v.

**MOORE et al., Appellees.**

[Cite as *Boyd v. Moore*, 184 Ohio App.3d 16, 2009-Ohio-5039.]

Court of Appeals of Ohio,
Second District, Champaign County.

No. 08–CA–30.

Decided Sept. 25, 2009.

Ronald C. Tompkins, for appellant.

G.S. Weithman, for appellee Marilyn J. Moore.

Darrell L. Heckman, for appellee Jonathan Heizer.

S. Todd Brecount, for appellee Russell Knox.

BROGAN, Judge.

{¶ 1} This appeal is brought by Melissa Boyd from a trial court's entry of judgment, after a bench trial, that finds Jonathan Heizer not liable for damages to Boyd's business incurred after Heizer severed underground electrical and telephone cables while digging fence-post holes on adjacent property. Boyd contends that Heizer is liable for negligence per se because he violated R.C. 3781.28(A) by failing to notify the Ohio Utilities Protection Service ("OUPS") before he began digging. We agree.

I

{¶ 2} Russell Knox[1] agreed to buy a parcel of property from his sister Marilyn Moore. Although he had not yet paid her the negotiated price, and she had not given him a deed, Knox nevertheless began making improvements to the property, which included the construction of a fence. He hired Jonathan Heizer to drill approximately 40 fence postholes. The fence was to sit between Moore's property and Melissa Boyd's adjacent property. On her property, Boyd ran a business called Melissa's Tanning.

{¶ 3} When Heizer arrived with an auger to dig the holes, on September 3, 1999, he saw that Knox had marked the path of the proposed fence with stakes and string. Heizer knew that he, as an excavator, was supposed to notify OUPS before he began digging. But Heizer assumed that because Knox had marked the path of the fence, Knox had taken care of notifying OUPS or, at least, that Knox knew that there were no underground utility lines to worry about. Knox never said anything to Heizer that would support either assumption.

{¶ 4} While Heizer was digging the fourth posthole, Boyd came running from her property and told him and Knox that Heizer had hit the electrical and telephone lines running to her property. Heizer stopped digging, and the utility companies were contacted. Both electrical service and telephone service were restored later the same day. The damaged utility lines served only Boyd's property, so no one else was affected.

{¶ 5} A year later, on September 8, 2000, Boyd filed a complaint against Moore, Knox, and Heizer for damages caused to her business resulting from the disruption in utility service. She asserted claims of joint and several liability for trespass, nuisance, and negligence. Boyd sought to recover $18,750.90 in conse-

---

1. Boyd states in her brief that Knox died "some years ago."

quential damages, the bulk of which was for lost revenue and repairs to equipment damaged by a "spike" in electrical current caused when Heizer hit the electrical line. Heizer filed a cross-claim against Knox for indemnity; Moore filed a cross-claim against both Heizer and Knox for indemnity.

{¶ 6} After a bench trial in July 2002, in September 2008, the trial court entered judgment. With little explanation, the court found that only Knox was liable to Boyd for damages because he was the sole cause of them. The court entered judgment against Knox for $13,378.50 in compensatory damages. It also found that Knox acted willfully, wantonly, and recklessly and acted in violation of commercial practice. For this, the court awarded Boyd $500 in punitive damages. Because of this judgment, the court found the cross-claims moot.

{¶ 7} Boyd timely appealed this judgment.

## II

{¶ 8} Boyd asserts that the trial court erred by not finding Heizer liable for negligence. She contends that Heizer's failure to meet his duty under R.C. 3781.28(A), to notify OUPS before he began digging, constitutes negligence per se. Heizer does not deny that he violated the statute or that he caused Boyd's damages. He contends that R.C. 3781.28(A) is intended for the sole benefit of utility companies, and they are the only ones who may hold him liable under the statute.

{¶ 9} The issue then is whether Heizer was negligent per se when he violated R.C. 3781.28(A). In reviewing this aspect of the trial court's judgment, we will defer to the court's findings of fact but review its legal conclusions de novo. See *Ohio Civ. Rights Comm. v. Harlett* (1999), 132 Ohio App.3d 341, 347, 724 N.E.2d 1242.

{¶ 10} Negligence is conduct that creates or fails to avoid unreasonable risks of foreseeable harm to others. See Terry, Negligence (1915), 29 Harv. L.Rev. 40. Each person has a duty to engage in her daily activities using a certain amount of care. A person acts negligently if her actions breach that duty of care, and she will be liable if the breach proximately causes another's injury. See *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265.

{¶ 11} The appropriate standard of care may differ with the activity. The standard of care by which a particular act is measured may be established by the common law, by the particular facts and circumstances of the case, or by legislative enactment. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198. The common-law standard, applicable in most situations, requires the degree of care that a "reasonable person," that is, a reasonably

prudent person in a like situation, would use. Where this standard applies to prove negligence, a plaintiff must show that the defendant failed to act like a reasonable person would have acted. But "[i]t is settled law that 'where a legislative enactment imposes upon any person a specific duty for the protection of others,' the failure to perform that duty is negligence per se," or negligence as a matter of law. *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, at ¶ 38, quoting *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 372, 53 O.O. 274, 119 N.E.2d 440.

{¶ 12} "The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute; no other facts are relevant." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, at ¶ 15. Where negligence is not a question of law, the plaintiff must show that the defendant had a duty of care and failed to act as a "reasonable person," an inherently subjective standard. But in negligence per se, the plaintiff need show only that a statute defined the standard of care to which the defendant's conduct must have conformed and that the defendant violated the statute. *Chambers* at 565, 697 N.E.2d 198. The difference with negligence per se, then, lies in how it is ·proved. *Swoboda v. Brown* (1935), 129 Ohio St. 512, 522, 2 O.O. 516, 196 N.E. 274. When the standard is set by the legislature, an objectively determined statutory violation alone proves that the defendant's actions failed to conform to the applicable standard of care, rendering the conduct per se negligent.

{¶ 13} For a statute to set the appropriate standard of care in a particular situation, it must impose a "specific duty." See *Ohio Edison Co. v. Wartko Constr.* (1995), 103 Ohio App.3d 177, 180, 658 N.E.2d 1118. The statute must set forth "a positive and definite standard of care * * * whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact." *Chambers* at 565, 697 N.E.2d 198. The duty must be imposed equally on all who engage in the relevant conduct. See *Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 373–374, 53 O.O. 274, 119 N.E.2d 440. For example, one who violates R.C. 5321.04(A)(1) by failing to comply with the Ohio Basic Building Code is negligent per se. *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 727 N.E.2d 1277. One who violates R.C. 5577.05 by driving a vehicle exceeding 102 inches on a public road without a permit is negligent per se. *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906. In each example, the statutory duty applies to all who engage in the particular activity and compliance can be determined by answering one question: Did the defendant comply with the building code? Did the defendant drive such a vehicle without a permit? Conversely, when a determination of statutory compliance requires a "subjective

analysis," the statute may not set the standard of conduct. See, e.g., *Bede v. Dayton Power & Light Co.*, Montgomery App. No. 18705, 2002-Ohio-237, 2002 WL 1000400 (statutory compliance required a determination of "approximate" and "best of its ability").

{¶ 14} The statute that Boyd argues should set the standard of care here imposes a specific duty on excavators, a duty that at common law is nondelegable. See, e.g., *Ohio Gas Co. v. Blaze Bldg. Corp.*, Williams App. No. WM–03–019, 2004-Ohio-2881, 2004 WL 1232037, at ¶ 11; *GTE N., Inc. v. Carr* (1993), 84 Ohio App.3d 776, 779, 618 N.E.2d 249. R.C. 3781.28(A) says, "[A]t least forty-eight hours but not more than ten days before commencing excavation, the excavator shall notify the protection service of the location of the excavation site and the date on which excavation is planned to commence." As in the two examples above, this duty is imposed on all excavators,[2] and whether the duty has been met requires an answer to only one question: Did the excavator timely notify the OUPS? No subjective analysis is needed to determine whether R.C. 3781.28(A) was violated. Thus, this statute may be adopted as the appropriate standard of care.

{¶ 15} The question now is whether it should be adopted as the standard of care for the conduct in this case.

{¶ 16} The United States Supreme Court said that it is a "familiar principle in the common law of negligence that injuries resulting from violations of a statutory duty do not give rise to liability unless of the kind the statute was designed to prevent." *Kernan v. Am. Dredging Co.* (1958), 355 U.S. 426, 442, 78 S.Ct. 394, 402, 2 L.Ed.2d 382. The Restatement codifies this principle by saying that a statute sets the standard of conduct where the statute's purpose is, at least in part,

{¶ 17} "(a) to protect a class of persons which includes the one whose interest is invaded, and

{¶ 18} "(b) to protect the particular interest which is invaded, and

{¶ 19} "(c) to protect that interest against the kind of harm which has resulted, and

{¶ 20} "(d) to protect that interest against the particular hazard from which the harm results." Restatement of the Law 2d, Torts (1965), Section 286.

---

2. "Excavator" is statutorily defined as "the contractor or other person who is responsible for making the excavation." R.C. 3781.25(J). "Excavation" is also defined in the statute as "the use of tools, powered equipment, or explosives to move earth, rock, or other materials in order to penetrate or bore or drill into the earth." R.C. 3781.25(H).

{¶ 21} There is little information available on the General Assembly's reasons for enacting R.C. 3781.28(A) or even on its reasons for enacting the entire statutory scheme found in R.C. 3781.25 et seq., "The Damage Prevention Act." *MCI WorldCom Network Servs., Inc. v. W.M. Brode Co.* (N.D.Ohio 2006), 411 F.Supp.2d 804, 807. With respect to the statutory scheme, courts agree that its purpose is to help safeguard underground utility facilities in private improvement projects. *Opincar v. F.J. Spanulo Constr.*, Cuyahoga App. No. 91255, 2008-Ohio-6286, 2008 WL 5096973, ¶ 18; *Ohio Gas Co. v. Blaze Bldg. Corp.*, Williams App. No. WM–03–019, 2004-Ohio-2881, 2004 WL 1232037, ¶ 11; *E. Ohio Gas Co. v. Kenmore Constr. Co. Inc.* (March 28, 2001), Summit App. Nos. CIV.A. 19567 and 19790, 2001 WL 302818; *United Tel. Co. of Ohio v. C.J. Mahan Constr. Co.* (1989), 63 Ohio App.3d 437, 440, 579 N.E.2d 250. One court went further and said that while damage protection is surely the immediate purpose, the broader purpose behind the statute is to "protect[ ] the public safety—in particular, the safety of construction workers and persons living, working, or playing near an excavation location." *Columbia Gas of Ohio, Inc. v. Columbus Asphalt Paving, Inc.*, 142 Ohio Misc.2d 118, 2006-Ohio-7303, 871 N.E.2d 659, ¶ 17. Referring to R.C. 3781.28(A) specifically, a court said that the purpose behind compelling excavators to notify the OUPS "is to provide the utility [the] opportunity to mark the location of its underground facilities." *MCI WorldCom* at 809. As the statute requires excavators to notify the OUPS, it is helpful to examine the OUPS's self-understanding.

{¶ 22} Among the OUPS's stated purposes are to protect the public and to prevent service disruptions. "The O.U.P.S. mission," says its website, "is to serve the customers' needs by providing a quality one call process to: protect the public; protect the underground infrastructure; protect the environment."[3] The OUPS membership application form reads, " '[T]he purpose for which the Ohio Utilities Protection Service was formed * * * is to operate a statewide one-call system * * * in order to reduce dig-in damages, periods of utility service disruptions, and the risk of injury to excavators and the public.' " *Cincinnati Ins. Co. v. Cleveland*, Cuyahoga App. No. 92305, 2009-Ohio-4043, 2009 WL 2469284, at ¶ 22. The OUPS, then, sees its role as broader than simply preventing damage to underground utilities.

{¶ 23} We think that the purpose of R.C. 3781.25 et seq. is broader than mere protection for underground utilities. We doubt that the General Assembly enacted this statute to protect underground utilities for their own sakes. And we find no evidence, and see no good reason to think, that the statute contemplates only the interests of utility companies. It only makes sense that the statutory

---

3. http://www.oups.org/about/about_mission_history.html.

scheme, and R.C. 3781.28(A)'s notification requirement in particular, seeks to prevent damage to underground utilities in order to prevent potential injuries and to protect a variety of interests—the utility owners' interest in preventing damage to their equipment, no doubt, but also the public's interest in safety and the interest in undisrupted service that those who rely on an underground utility have. While the immediate purpose of the statute may be to protect underground utilities, this is simply the means chosen by the General Assembly to achieve larger goals.

{¶ 24} Therefore, we think that R.C. 3781.28(A) set the standard of care by which Heizer's conduct must be judged. Boyd, as the one who relied on the utility service to her property, is part of the class of people that the statute is meant to protect. One of the statute's purposes is to protect utility service to a property from disruption that results in damage, like that suffered by Boyd. Finally, the statute plainly intends to prevent disruption caused by accidental damage while digging.

{¶ 25} We reject Heizer's contention that the statutory protection is solely for the sake of utility companies. Heizer cites the case of *Opincar v. F.J. Spanulo Constr.*, Cuyahoga App. No. 91255, 2008-Ohio-6286, 2008 WL 5096973, as conclusive support for this contention, but his reliance on the case is misplaced. *Opincar* does not say that the benefits of protection provided by R.C. 3781.28(A) run only to utility owners. There, the plaintiffs hired the defendant to do the necessary excavating for the construction of a garage on the plaintiffs' property. The defendant did what digging was needed, and the garage was built. Unfortunately, the new garage sat over a gas line. The gas company told the plaintiffs that the garage needed to be moved, which meant the plaintiffs were forced to demolish their new garage. The plaintiffs filed a negligence claim against the excavator. They argued that the excavator was negligent per se for failing to notify OUPS as he was required to do by R.C. 3781.25 et seq. The court noted first that the statutes do not create a cause of action for failing to notify OUPS. The court then found that the excavator had no duty to the plaintiffs to ascertain the location of underground utilities before digging. The statutory duties, said the court, are imposed to prevent an excavator from damaging such utilities. Because the excavator in this case did not damage the utility lines, the plaintiffs could not use the statute to hold him liable. *Opincar*, then, lends little support to Heizer's contention.

{¶ 26} Negligence per se is not liability per se. *Chambers*, 82 Ohio St.3d at 565, 697 N.E.2d 198 ("Application of negligence *per se* in a tort action means that the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff. It is not a finding of liability *per se* "). Heizer does not contend that he did not proximately cause the damage that Boyd

suffered, and given the undisputed facts, we think that he was a cause of the damage, which makes him liable to Boyd. Because the finding that Knox is liable is not challenged, however, we cannot say that Heizer is solely liable. We leave the issue of liability apportionment for the trial court to address on remand.

## III

{¶ 27} The judgment of the trial court finding Heizer not liable is reversed. The remainder of the judgment is affirmed. This case is remanded for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FAIN and FROELICH, JJ., concur.