**In the Matter of the JULIE R. WATERFIELD IRREVOCABLE TRUST AGREEMENT DATED OCTOBER 21, 1997.**

**Richard R. Waterfield and J. Randall Waterfield, Appellants,**

**v.**

**The Trust Company of Oxford and Julie R. Waterfield, Appellees.**

**No. 49A04–1103–TR–95.**

Court of Appeals of Indiana.

Dec. 30, 2011.

Richard A. Kempf, Abram B. Gregory, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorneys for Appellants.

Karl L. Mulvaney, David C. Campbell, Briana L. Clark, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellee The Trust Company of Oxford.

Byron L. Gregory, Foley & Lardner LLP, Chicago, IL, Jarrell B. Hammond, Lewis Wagner, LLP, Indianapolis, IN, Attorneys for Appellee Julie R. Waterfield.

## OPINION

BAILEY, Judge.

### STATEMENT OF THE CASE

Richard R. Waterfield and J. Randall Waterfield appeal the trial court's entry of

summary judgment for Julie R. Waterfield and The Trust Company of Oxford ("TCO"). Richard and Randall raise two issues [1] for our review, which we restate as follows:

1. Whether Richard and Randall's claims for breach of fiduciary duty and breach of trust are time-barred; and

2. Whether Richard and Randall have demonstrated a genuine issue of material fact that they were injured by Julie's and TCO's allegedly fraudulent behavior.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Richard and Randall are two of Julie's three children, and the grandchildren of John and Ruth Rhinehart, Julie's parents. In 1997, John and Ruth established the Julie R. Waterfield Irrevocable Trust ("the Trust") with an initial principal balance of $4 million. The Trust's stated purpose is for Julie's "benefit." Appellants' App. at 241. Under the terms of the Trust, Julie was originally entitled to an annual distribution of $100,000. Richard and Randall are not entitled to any distributions from the Trust. Rather, any distributions Richard and Randall might receive from the Trust are discretionary and require an assessment of their health, education, maintenance, and support needs at the time of the potential distribution.

John and Ruth named themselves co-trustees of the Trust along with TCO, but after John's death Ruth served as co-trustee with TCO. The Trust terminates at Julie's death, at which time its assets will pour over into additional trusts created by John and Ruth ("the Pour–Over Trusts"). Under the terms of the Pour–Over Trusts, Richard and Randall will each be entitled to an annual $25,000 distribution and might also receive discretionary distributions under certain conditions identical to the provisions in the Trust.

Sometime before November of 2002, Ruth pledged $1.5 million to Indiana University–Purdue University Fort Wayne ("IPFW") to fund a new recital hall within IPFW's music building. Ruth intended to fund her pledge with stock holdings, but those holdings later became worthless. In November of that year, Ruth met with her attorney, C. Daniel Yates, and TCO financial advisor Debra Bennett. The three agreed that, "to achieve [Ruth's] objectives, the [T]rust [would] have to be reformed." Appellants' App. at 495.

Pursuant to the terms of the Trust, Ruth, in her "sole judgment and discretion," initiated the reformation process. Appellants' App. at 248. However, in order to reform the Trust, the reformation had to be based on an "unforeseeable condition," such as an "event[ ] tending to greatly impair the intent and purposes of" the Trust. Appellants' App. at 247–48. And to protect that limited basis for reformation, Ruth had to obtain the permission of a court.

Shortly thereafter, TCO hired Yates as its own attorney. On December 13, 2002, TCO, as co-trustee, filed a "Petition to Docket and Reform Trust and Remove Trust From Docket" in the Marion Superior Court. Appellants' App. at 66. The petition sought to increase Julie's annual

1. Given our disposition, we need not consider Richard and Randall's arguments that they were not bound by their consent to reform the Trust or that the "trial court ... erred in applying the advice of counsel defense." Appellants' Br. at 14. We also do not consider TCO's assertion that Richard and Randall have waived appellate review of the trial court's judgment because they failed to provide an adequate appendix.

distribution from the Trust from approximately $100,000 to $275,000 for the rest of Julie's life. No other changes were requested. That same day, the court conditionally granted TCO's petition provided that all primary, remainder, and contingent beneficiaries of the Trust—eighteen people total—filed a written consent to the reformation within thirty days of TCO's petition.

Yates, who had prepared the Trust and now represented both TCO and Ruth, drafted the necessary consent forms. According to the consent form relevant here ("the Consent Form"):

The undersigned do hereby state, as follows:

1. Julie R. Waterfield is the primary beneficiary ("Primary Beneficiary") of the [T]rust. . . .

2. Jill Loraine Waterfield, Richard Rhinehart Waterfield, and John Randall Waterfield are the remainder beneficiaries of the Trust.

\* \* \*

4. Each of the undersigned has read the Petition to Docket and Reform Trust and Remove Trust From Docket, attached hereto as Exhibit "A" and by reference made a part hereof, of [TCO], a Co-Trustee of the Trust, as the petitioner, and understands that the Petition seeks an order, without notice and a hearing, for the Court to (i) invoke the jurisdiction of the Court over the Trust; (ii) docket the same for the limited purpose of reforming the Trust to provide that commencing on January 1, 2003, the sum of [$275,000] be distributed annually to the Primary Beneficiary [Julie], during her lifetime, in installments not less frequently than quarterly; (iii) order that the Co-Trustees of the Trust be held harmless and released from any liability related to such reformation and

that they be indemnified from the assets of the trust for any such liability (including reasonable attorneys' fees); and (iv) authorize the Clerk of the court to remove the Trust from the Trust Docket Book of this Court's records.

5. Each of the undersigned acknowledges and understands that the terms of such reformation will reduce the assets of the Trust[,] and, accordingly, that they or their issue will ultimately receive less or none of the assets of the Trust than if such reformation were not made.

6. This Consent shall be binding upon each of the undersigned and his or her respective heirs, successors, assigns[,] and legal representatives.

7. Each of the undersigned voluntarily and irrevocably (i) consents to such reformation of the Trust, the indemnification of the Co-Trustees and the other actions as set forth in paragraph 4 above, (ii) executes this Consent on behalf of himself or herself and his or her respective issue, and (iii) understands that this Consent shall be binding upon his or her heirs, successors, assigns[,] and legal representatives.

8. Each of the undersigned waives his or her right to notice and hearing in this matter.

9. Each of the undersigned acknowledges, with respect to this Consent, that he or she (i) was not represented by counsel for the petitioner . . . , (ii) did not receive any advice from said counsel, and (iii) had the right and opportunity to obtain independent counsel prior to signing.

EACH OF THE UNDERSIGNED AFFIRMS, UNDER THE PENALTIES FOR PERJURY, THAT THE FOREGOING REPRESENTATIONS ARE TRUE.

Appellants' App. at 207–09. The Consent Form's pages were numbered, with the

signature page on numbered page three, which included the emphasized perjury notice ("the Signature Page").

Yates read the Consent Form to Ruth and Julie at a meeting and explained the necessity of obtaining the signatures of all beneficiaries in order to reform the Trust. Ruth and Julie informed Yates that they would obtain the signatures of Julie's children while the family was together for the holidays. Bennett agreed to give a presentation to Julie's children, among others, on December 26.

On December 26, Ruth held a family meeting at her house. Richard and Randall were present. The proposed reformation of the Trust was on the agenda for the meeting, which Richard later recalled having seen. Richard also later acknowledged that "IPFW may have been mentioned" at that meeting. Appellants' App. at 415. Richard, Randall, and the other beneficiaries executed the Consent Form. According to Richard's later testimony, they signed the Signature Page "a few days before" the family meeting, which Julie had told him "related to the reformation," and Richard then "asked for the [full] documents." Appellants' App. at 415. TCO filed the fully executed Consent Form with the court on January 6, 2003, and the court granted the request to reform the Trust.

On January 8, 2003, Yates sent a letter to Richard. Yates stated, "[a]s requested, enclosed are copies of the Verified Consents you recently signed regarding ... the [Trust] for your records. Should you have any questions or comments, of course, please let us know." Appellants' App. at 418. At the bottom of the letter, Yates indicated there were "[e]nclosures." Appellants' App. at 418. Richard later recalled receiving Yates' letter, but had no "specific recollection one way or the other" whether he saw the enclosures. Appel-lants' App. at 416. Richard also agreed that it would be "reasonable to assume that [he] would have contacted [Yates] about the missing documents" but stated that he had "no recollection of contacting Mr. Yates." Appellants' App. at 416.

More than three years later, on March 24, 2006, the parties entered into a tolling agreement ("the Tolling Agreement"), which preserved any causes of action that had not yet tolled under the applicable statute of limitations. On March 22, 2007, Richard and Randall filed a complaint against Julie and TCO. In their original complaint, Richard and Randall alleged that Julie and TCO had obtained their signatures consenting to the reformation of the trust through fraud. Two months later, Richard and Randall filed their amended complaint. In their amended complaint, Richard and Randall reiterated that they did not knowingly execute the Consent Form and that they did not learn of Julie's increased annual distribution from the Trust "until long after" January of 2003. Appellants' App. at 71. In their amended background allegations, Richard and Randall stated that, in an earlier filing with the court, TCO had acknowledged that "a portion of the additional distributions [to Julie under the reformed Trust] was to be used to support Ruth['s] pledge to [IPFW] of $1.5 million," which was "inconsistent" with the stated purpose for the reformation of the Trust. Appellants' App. at 67 (quotations omitted). Richard and Randall then raised the following allegations: fraud, constructive fraud, breach of fiduciary duty, breach of trust, and improper reformation of trust. Richard and Randall sought as relief, among other things, restoring Julie's distribution from the Trust to $100,000 per year.

On December 22, 2009, TCO filed its motion for summary judgment. On January 27, 2010, Julie likewise filed a motion

for summary judgment. Richard and Randall filed their response on March 16. The court held a hearing on the motions in November of 2010, and, on January 31, 2011, the court granted summary judgment for TCO and Julie on all claims. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Richard and Randall appeal the trial court's summary judgment for TCO and Julie. Our standard of review for summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind.2009) (citations omitted). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Knoebel v. Clark County*

*Superior Court No. 1*, 901 N.E.2d 529, 531–32 (Ind.Ct.App.2009).

 The trial court entered detailed findings and conclusions in its order on summary judgment. The entry of specific findings and conclusions does not alter the nature of a summary judgment, which is a judgment entered when there are no genuine issues of material fact to be resolved, nor does it alter our review upon appeal. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). Thus, in the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon, which merely aid our review by providing us with a statement of reasons for the trial court's actions and, as with the trial court's order here, detailed citations to the summary-judgment documents. *Id.*

### Issue One: Statute of Limitations for Claims of Breach of Fiduciary Duty and Breach of Trust

Richard and Randall assert that TCO and Julie breached their fiduciary duties and committed a breach of trust in the reformation of the Trust. Specifically, Richard and Randall allege that TCO and Julie were fiduciaries to Richard and Randall yet, despite that relationship, "neither [TCO nor Julie] informed [Richard and Randall] of the purposes for the Signature Pages and the contents of the Consent document to which their signatures were later attached." Appellants' Br. at 17–18. Richard and Randall further allege that they "relied upon and trusted" their fiduciaries "when they signed the Signature Pages without having read—or having been provided—the Consent documents or Petition. Accordingly, they are not bound as a matter of law to their signatures," which leads them to conclude that the reformation was accomplished without their consent. Appellants' App. at 18.

■ In its summary judgment motion, TCO asserted that it was entitled to summary judgment on these two claims because (among other things) the statute of limitations had run. Where, as here, the alleged injury is to personal property, the statute of limitations for a claim of breach of fiduciary duty is two years. Ind. Code § 34-11-2-4(2). The statute of limitations for a claim for breach of trust is three years. I.C. § 30-4-6-12. We agree with TCO that these two claims are time barred.

■ The undisputed evidence shows the following: in December of 2002, Richard and Randall signed the Signature Page; the Signature Page contains language that is in clear reference to the Trust; and the Signature Page is numbered page 3 of a larger document. Richard and Randall allege that they did not read or consider the Consent Form as a whole when they signed the Signature Page.

Nonetheless, on January 8, 2003, Yates sent a letter to Richard. Yates stated, "[a]s requested, enclosed are copies of the Verified Consents you recently signed regarding ... the [Trust] for your records. Should you have any questions or comments, of course, please let us know." Appellants' App. at 418. And at the bottom of the letter, Yates indicated there were "[e]nclosures." *Id.* Richard later recalled receiving Yates' letter, but had no "specific recollection one way or the other" whether he saw the enclosures. *Id.* at 416. Richard also agreed that it would be "reasonable to assume that [he] would have contacted [Yates] about the missing documents" but stated that he had "no recollection of contacting Mr. Yates." *Id.*

Although Richard and Randall acknowledge that they were aware of the existence of the Consent Form as early as January 8, 2003, they claim that they did not actually receive that document and its attached exhibits until March 26, 2004, and then only after "diligent efforts to obtain copies of the Consent documents and other Trust documents." Appellants' Br. at 30. On March 26, 2006, Richard and Randall entered into the Tolling Agreement, and they filed suit on March 22, 2007. Richard and Randall further allege that they did not learn of the purportedly illicit purpose for the reformation—to provide a means to fund Ruth's $1.5 million pledge to IPFW—until after they filed their lawsuit.

Richard and Randall's claims for breach of fiduciary duty and breach of trust are time barred. The alleged tortious conduct occurred in December of 2002 and January of 2003. The parties did not enter into their Tolling Agreement until March of 2006, more than three years later. As such, the statute of limitations on both actions had expired prior to the execution of the Tolling Agreement, and that agreement has no effect on these two alleged causes of action.

■ Richard and Randall attempt to avoid the statute of limitations by asserting that they could not have discovered their claims until well after January of 2003. The "discovery rule" states that "a cause of action accrues when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the act of another." *Farmers Elevator Co. of Oakville, Inc. v. Hamilton,* 926 N.E.2d 68, 77 (Ind.Ct.App.2010) (quotations omitted), *trans. denied.* Further, when a tortfeasor conceals discovery of the alleged tort, the statute of limitations is tolled until discovery of the tort. See *State v. Puckett* 531 N.E.2d 518, 524 (Ind.Ct.App.1988). However, "the failure of the plaintiff to exercise reasonable care and diligence to discover [the alleged tort] precludes the tolling of the statute." *Id.*

The undisputed evidence shows that Richard and Randall knew or, in the exercise of reasonable care and diligence, should have known not later than Yates' letter of January 8, 2003, of the existence and the extent of the reformation and the relationship of the Consent Form and the Signature Page to that reformation.[2] From that date forward, Richard and Randall knew or should have known of the reformation, which they allege was achieved without their consent and in breach of the Trust and TCO and Julie's fiduciary duties. Thus, their claim for breach of fiduciary duty expired on January 8, 2005, and their claim for breach of trust expired on January 8, 2006.

Further, we are not persuaded by Richard and Randall's assertion that they could not have discovered these causes of action in a timely manner because they did not learn of the purported relationship between the reformation of the Trust and Ruth's pledge to IPFW until after they had filed their original complaint. The heart of Richard and Randall's breach of trust and breach of fiduciary duty allegations is the manner in which TCO and Julie acquired Richard and Randall's signatures. According to the amended complaint, TCO and Julie failed "to inform [Richard and Randall] about the nature and impact of the Signature Page and Consent...." Appellants' App. at 78. That failure, they allege, was a breach of TCO and Julie's fiduciary responsibilities and, because the reformation is based on those improper signatures, that conduct likewise constituted a breach of trust by TCO and Julie. Nothing about those actions required knowledge of the purported relationship between the reformation and Ruth's pledge to IPFW. Accordingly, Richard and Randall cannot rely on a fiduciary relationship to toll the statute of limitations.

In sum, we hold that Richard and Randall's claims for breach of fiduciary duty and breach of trust are time barred. Although Julie has not expressly made the same argument on her own behalf, our conclusion applies equally to her. Accordingly, we hold that the trial court properly entered judgment as a matter of law for TCO and Julie on these claims.

### Issue Two: Evidence of Injury for Claims of Fraud and Constructive Fraud

We next address Richard and Randall's allegations that TCO and Julie committed fraud and constructive fraud based on the Trust reformation.[3] For each of those causes of action, Richard and Randall must demonstrate injury. *See, e.g., Baxter v. I.S.T.A. Ins. Trust*, 749 N.E.2d 47, 50 (Ind.Ct.App.2001) (noting that fraud without injury does not give rise to a cause of action) (citing *Gonderman v. State Exch. Bank, Roann*, 166 Ind.App. 181, 191, 334 N.E.2d 724, 730 (1975)); *Stoll v. Grimm*, 681 N.E.2d 749, 758 (Ind.Ct.App.1997) ("In an action for fraud, the injured party is entitled to compensation for damage suffered as a result of the fraudulent representation."); *see also Strong v. Jackson*, 777 N.E.2d 1141, 1147 (Ind.Ct.App.2002) (holding that there can be no claim for constructive fraud if there is "no injury to the complaining party as a proximate result" of the allegedly fraudulent conduct), *reaff'd on reh'g*, 781 N.E.2d 770 (Ind.Ct.App.2003), *trans. denied.*

In support of their motions for summary judgment, TCO and Julie submitted evidence demonstrating the following undisputed facts: the Trust's opening

---

2. Randall does not dispute that Yates' letter put him on the same notice it put Richard.

3. The statute of limitations on allegations of fraud is six years. Ind.Code § 34–11–2–7.

balance in 1997 was approximately $4 million; the balance of the Trust in 2009 was approximately $22 million; and Julie is the only beneficiary of the Trust entitled to guaranteed distributions. Any distributions Richard and Randall might receive from the Trust are discretionary and require an assessment of their health, education, maintenance, and support needs at the time of the potential distribution.

Upon Julie's death, the Trust's assets are to be transferred to the Pour–Over Trusts. Assuming a 3.16% annual rate of return, which is less than the Trust's historical performance and less than the twenty-year rate of return for the asset class in which the Trust is invested, *see* Appellees' App. at 497, the Trust is expected to pass more than $32 million into the Pour–Over Trusts upon Julie's death (based on the reformed distribution amounts to Julie). Richard and Randall will then each be entitled to an annual distribution of $25,000. The expected total guaranteed distribution to Richard and Randall from the Pour–Over Trusts is slightly less than $15 million. Richard and Randall might receive additional discretionary distributions from the Pour–Over Trusts, but any such distributions are not automatic and may be denied by the trustee.

Richard and Randall have not presented any evidence of an actual injury as a proximate result of TCO and Julie's allegedly fraudulent conduct.[4] As described by the undisputed evidence, Julie's increased annual distribution from the Trust will have no discernible effect on any distributions Richard and Randall will receive from the Pour–Over Trusts. Their allegations to the contrary are pure speculation and lack the evidentiary foundation necessary to rebut the evidence presented by TCO and Julie. *See Beatty v. LaFountaine,* 896 N.E.2d 16, 20 (Ind.Ct.App.2008) ("guesses, supposition[,] and conjecture are not sufficient to create a genuine issue of material fact to defeat summary judgment.") (quotation omitted), *trans. denied.*

Cognizant of this lack of evidence, Richard and Randall instead assert that harm to the body of the Trust is sufficient injury to sustain their fraud allegations. On these facts, we cannot agree. In support of their conclusion, Richard and Randall rely on several Indiana cases, which collectively fall into two categories. First, Richard and Randall reference law that shows a claim for breach of fiduciary duty or a claim for breach of trust may be made based solely on an allegation of harm to the body of a trust. *See, e.g.,* Ind.Code § 30–4–3–11(b) ("If the trustee commits a breach of trust, the trustee is liable to the beneficiary for: (1) any loss or depreciation in the value of the trust property as a result of the breach . . . ."). But, as discussed above, Richard and Randall's claims of breach of fiduciary duty and breach of trust are time barred.

The other category of law referenced by Richard and Randall note that claims of fraud may be based on a "legal injury." Appellants' Br. at 23. But none of those cases state that an action for fraud or constructive fraud may be based merely on

---

4. TCO contends that Richard and Randall's lack of demonstrable injury denies them standing. This is a misunderstanding by TCO. It is true that, to have standing, the challenging party must show adequate injury or the immediate danger of sustaining some injury. *Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 945 (Ind.1999) (citing *Pence v. State,* 652 N.E.2d 486, 488 (Ind.1995)). Richard and Randall alleged they were defrauded. That they failed to meet their burden of proof on an element of those allegations is a matter of the evidentiary sufficiency of their legal claims, not a matter of their standing to raise the claims in the first place.

injury to the body of the Trust. Indeed, in *First Farmers Bank & Trust Co. v. Whorley*, relied on by Richard and Randall, this court held that the sole beneficiary to an estate had demonstrated sufficient injury to maintain her action, but only after she had shown a *"direct injury* as a result of . . . [the] alleged breach of fiduciary duty." 891 N.E.2d 604, 612 (Ind.Ct.App.2008) (emphasis added), *trans. denied.* Thus, an abstract injury is not sufficient to survive summary judgment. *See id.; Beatty,* 896 N.E.2d at 20. Richard and Randall must connect the harm from the body of the Trust to themselves. They have not done so.[5]

Our reasoning applies with equal force to Richard and Randall's allegations of fraud on the court. To show fraud on the court, "the party must establish that an unconscionable plan or scheme was used to improperly influence the court's decision[,] and that such acts prevented the [complaining] party from fully and fairly presenting its case or defense." *Stonger v. Sorrell,* 776 N.E.2d 353, 357 (Ind.2002). "Fraud on the court has been narrowly applied and is limited to the most egregious of circumstances involving courts." *Id.* Further, the remedy for such a claim is "extremely limited." *Id.* at 356. We fail to see how Richard and Randall are in a position to claim that TCO and Julie's behavior was an "egregious" use of the court when they themselves have suffered no demonstrable injury. *See Global Travel Agency, Inc. v. Metal Recovery Techs., Inc.,* 727 N.E.2d 1101, 1104–05 (Ind.Ct.App.2000). Hence, TCO and Julie

are entitled to judgment as a matter of law on Richard and Randall's claims of fraud and constructive fraud.

## Conclusion

In sum, the trial court properly entered summary judgment for TCO and Julie. Richard and Randall's claims for breach of fiduciary duty and breach of trust are time barred. And their claims for fraud and constructive fraud are not supported by any evidence of actual injury. As such, there is no genuine issue of material fact that precludes the entry of summary judgment for TCO and Julie, and we affirm the trial court's entry of judgment as a matter of law.

Affirmed.

BAKER, J., and DARDEN, J., concur.

---

**5.** For the same reasons, Richard and Randall cannot demonstrate that they have suffered injury from the alleged "lost . . . legal right to refuse to consent to the Reformation." Appellants' Br. at 25. Further, our holding in favor of TCO and Julie in this action is not a comment on whether another beneficiary of the Trust or the Pour–Over Trusts will be

prohibited from bringing an action against TCO or Julie for the allegedly fraudulent behavior. Rather, we hold only that Richard and Randall have not met their burden to rebut the presumption of summary judgment established by the undisputed evidence in favor of TCO and Julie.