[Cite as *Cincinnati Bell Telephone Co., L.L.C. v. J.K. Meurer Corp.*, 2022-Ohio-540.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CINCINNATI BELL TELEPHONE COMPANY, LLC, | : | APPEAL NO. C-210139<br>TRIAL NO. 20CV-08867 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| J.K. MEURER CORPORATION, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 25, 2022

*McCaslin, Imbus, & McCaslin* and *Michael P. Cussen,* for Plaintiff-Appellee,

*Gary F. Franke Co., LPA, Gary F. Franke* and *William M. Bristol,* for Defendant-Appellant.

**Bock, Judge.**

{¶1}    Defendant-appellant J.K. Meurer Corporation ("J.K. Meurer") was repaving a driveway when it sliced underground utility lines belonging to plaintiff-appellee Cincinnati Bell Telephone Company, LLC ("Cincinnati Bell"). J.K. Meurer appeals the trial court's judgment of $10,393.73 in favor of Cincinnati Bell. For the following reasons, we affirm the trial court's judgment.

## I.      Facts and Procedure

{¶2}    J.K. Meurer is a pavement contractor. In June 2019, J.K. Meurer was hired to repave a driveway adjoining 2924 and 2920 Burnett Avenue ("Burnett Driveway") in Cincinnati, Ohio. Cincinnati Bell provides services to Burnett Avenue through underground utility cables.

{¶3}    On June 24, 2019, Cincinnati Bell received service complaints from customers on Burnett Avenue. Cincinnati Bell discovered damage to its cables connected to the Burnett Driveway. Cincinnati Bell replaced the damaged cables and billed J.K. Meurer for the repair costs. Cincinnati Bell filed negligence claims against J.K Meurer for allegedly damaging Cincinnati Bell's underground utility lines during the excavation and removal of the driveway surface. J.K. Meurer denied the allegations. The case proceeded to a bench trial.

{¶4}    At trial, Cincinnati Bell entered multiple documents into evidence, including a damage cable report, damage billing records, a repair call log, and a cable run diagram of the investigation and repair of the damaged utility lines beneath the Burnett Driveway. Artis Hickman, Cincinnati Bell's manager who investigated the damages, testified that he had discovered damage to the utility lines and photographed a newly paved driveway. According to Hickman, the cables "had to be replaced because [the Burnett Driveway] was paved over."

{¶5} Robert Wayne Reid, the J.K. Meurer manager who repaved the Burnett Driveway, testified that J.K. Meurer did not contact the Ohio Utility Protection Service ("OUPS") to locate or mark underground cables. To repave the driveway, Reid used a Bobcat affixed with a "grinder" to loosen the existing asphalt and "take it out." Reid "didn't think [J.K. Meurer] needed to" call OUPS because J.K. Meurer "wasn't going as deep as the wire was supposed to be." But in the course of grinding the existing asphalt, his equipment struck an underground cable. Reid notified a supervisor when he became aware of the damage to the cable.

{¶6} As for damages, Cincinnati Bell entered an invoice into evidence that identified its expenses incurred repairing the damaged utility line. Tom Paolucci, the director of accounting for Cincinnati Bell, testified that repair work cost $10,393.73, calculated under the rules promulgated by the Public Utility Commission of Ohio. Cincinnati Bell tracked repair costs through a damage billing number. The costs of repairs included internal labor, material, and charges from a subcontractor.

{¶7} Following the close of Cincinnati Bell's case, J.K. Meurer moved for a directed verdict, asserting that Cincinnati Bell failed to prove the elements of negligence. The trial court deferred ruling on the motion.

{¶8} J.K. Meurer's vice president, Mitch Meurer, testified that he was present when Reid struck the cable under the Burnett Driveway. Mr. Meurer was unaware that the line "was alive because it was buried so shallow." After his company damaged the line, Mr. Meurer contacted the owner of the 2924 and 2920 Burnett Avenue properties to find out which utility companies serviced those buildings and if any residents experienced any service interruptions. Mr. Meurer tes did not contact OUPS because he believed it was his customer's responsibility to report the damage

3

to the cable. When "nobody had reported any problems," J.K. Meurer paved over the damaged line.

{¶9} The trial court found J.K. Meurer negligent and entered judgment for Cincinnati Bell. The trial court determined that J.K. Meurer was excavating as defined by R.C. 3781.25(I). The trial court concluded that "R.C. 3781.28 obligated [J.K. Meurer] to contact OUPS before excavating" and JK Meurer breached that duty when it failed to contact OUPS. The trial court awarded $10,393.73 to Cincinnati Bell.

{¶10} J.K. Meurer appeals.

## II. Law and Analysis

{¶11} J.K. Meurer raises two assignments of error. First, it contends that Cincinnati Bell failed to satisfy its burden of proof for the elements of negligence.

{¶12} While J.K. Meurer does not identify a standard of review, we review a judgment following a bench trial to determine if its judgment is against the manifest weight of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. Under a manifest-weight standard, "we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that its judgment must be reversed and a new trial ordered." *Id.* at ¶ 20.

### A. J.K. Meurer Excavated the Burnett Driveway

{¶13} As an initial matter, we must determine whether J.K. Meurer was excavating when it repaired the Burnett Driveway.

4

{¶14} An excavator is "the contractor or other person who is responsible for making the excavation." R.C. 3781.25(J). Excavation means "the use of tools, powered equipment, or explosives to move earth, rock, or other materials in order to penetrate or bore or drill into the earth, or to demolish any structure whether or not it is intended that the demolition will disturb the earth." R.C. 3781.25(I).

{¶15} J.K. Meurer characterizes its work as "grinding blacktop," which it distinguishes from excavation. J.K. Meurer used a "grinder" on the Burnett Driveway. Its employees testified that the company removed the existing asphalt from the Burnett Driveway. Thus, J.K. Meurer used powered equipment to remove materials. The central issue is whether J.K. Meurer's equipment demolished a structure.

{¶16} Ohio law has not addressed the contours of the term "excavation" under the common law or R.C. 3781.25. Our review of the case law has unearthed only one case discussing a contractor's removal of a sidewalk as an excavation. *GTE Tel. Operations v. J&H Reinforcing & Structural Erectors*, 4th Dist. Scioto No. 01CA2808, 2002-Ohio-2553, ¶ 15 (finding a company's "preconstruction meeting" with utility representatives complied with the spirit of R.C. 3781.28(A) and satisfied the duty to ascertain the location of utility cables).

{¶17} Cincinnati Bell argues that grinding asphalt falls under the statutory definition of excavating. This raises a question of statutory construction and presents an issue of law that we review de novo. *Vontz v. Miller*, 2016-Ohio-8477, 111 N.E.3d 452, ¶ 26 (1st Dist.). We first look to the statutory language to determine its meaning. *Cincinnati Community Kollel v. Testa*, 135 Ohio St.3d 219, 2013-Ohio-396, 985 N.E.1236, ¶ 25. If the statute's meaning is clear, definite, and unambiguous, we apply the statute as written. *WCI, Inc. v. Ohio Liquor Control Comm.*, 116 Ohio St.3d 547,

5

2008-Ohio-88, 880 N.E.2d 901, ¶ 19. Words and phrases left undefined in a statute "are to be given their common, ordinary, and accepted meaning." *State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 39, citing *Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus. Statutory context, rules of grammar, and common usage all guide our interpretation. R.C. 1.42.

{¶18} Following an objective examination of the statute, if "a definitive meaning proves elusive," courts may look beyond the statutory language and apply rules of statutory construction. *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 11. Two common-sense principles of statutory construction are relevant here. The principle of noscitur a sociis provides that "words grouped in a list should be given related meaning." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990). According to this principle, the meaning of an unclear word may be derived from surrounding words. *Wray v. Albi Holdings, PLL*, 1st Dist. Hamilton No. C-200381, 2021-Ohio-3920, ¶ 13, citing *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 43. Similarly, the principle of ejusdem generis dictates that, when a general word follows an enumerated list of specific objects, we interpret the general word in a manner consistent with the specific objects. *Wray* at ¶ 14.

{¶19} The statutory context of R.C. Chapter 3781 tells us that the Burnett Driveway was a "structure." Under R.C. 3781.25(I), an excavation consists of the demolition of "any structure whether or not it is intended that the demolition will disturb the earth." Elsewhere in the chapter, the Revised Code discusses the duty to notify OUPS for any project that requires excavation. *See* R.C. 3781.27(A) and 3781.28(E). A project is "an improvement requiring excavation." R.C. 3781.25(S).

{¶20} An improvement is "any construction, reconstruction, improvement, enlargement, alteration, or repair of a building, highway, drainage system, water system, road, street, alley, sewer, ditch, sewage disposal plant, water works, and all other structures or works of any nature." R.C. 3781.25(U). Reading the word "structure" in harmony with "highway," "water system," "road," "street," "alley," and "sewer" indicates that a driveway is a structure as used throughout R.C. Chapter 3781. When we consider the shared characteristics of the words preceding "structure," mainly "road," "street," and "alley," it is apparent that "structure" refers to a private driveway.

{¶21} Therefore, we find that J.K. Meurer's use of powered equipment to move materials and demolish the existing driveway constitutes an excavation.

## B. Negligence

{¶22} To prove negligence, a party must establish a duty, a breach of that duty, and an injury caused by that breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989), citing *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 247 N.E.2d 732 (1969). The existence of a legal duty is a question of law for the courts and reviewed de novo. *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22, citing *Mussivand* at 318.

{¶23} A legal duty "may be established by common law, by legislative enactment, or by the particular circumstances of a given case." *Shepherd v. City of Cincinnati*, 168 Ohio App.3d 444, 2006-Ohio-4286, 960 N.E.2d 808, ¶ 14 (1st Dist.), citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998), citing *Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 119 N.E.2d 440 (1954), paragraph one of the syllabus.

7

### 1. J.K. Meurer was Negligent Per Se

{¶24} Cincinnati Bell argues that J.K. Meurer's violation of R.C. 3781.28(A) constitutes per se negligence. When a statute establishes a " 'positive and definite standard of care' " and supplants the common law standard of care, " 'a violation of that statute constitutes negligence *per se.*' " *Sikora v. Wenzel*, 88 Ohio St.3d 493, 496, 727 N.E.2d 1277 (2000), quoting *Chambers* at 565, quoting *Eisenhuth* at 374-375. A statutory violation is negligence per se when the statute's "positive and definitive standard of care" can be objectively applied to all who engage in the particular activity, and the resulting injury is the kind the statute was designed to prevent. *Boyd v. Moore,* 184 Ohio App.3d 16, 2009-Ohio-5039, 919 N.E.2d 283, ¶ 13-20 (2d Dist.), citing *Chambers* at 656. The practical effect of a statutory violation as negligence per se is that a statutory violation satisfies the breach and duty elements of negligence. *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 15. A plaintiff must still prove causation and damages. *Sikora* at 496, citing *Chambers* at 565.

{¶25} R.C. 3781.28(A) states, in relevant part, that an "excavator shall notify [OUPS] of the location of the excavation site and the date on which excavation is planned to commence." As discussed, J.K. Meurer excavated the Burnett Driveway and conceded that it did not notify OUPS before doing so.

{¶26} We note that J.K. Meurer argues that "the sole reason for the line being damaged" was Cincinnati Bell's "failure to place the line at the required depth of eighteen inches." J.K. Meurer presents no rule, case law, or statute that excuses an excavator's failure to comply with R.C. 3781.28(A) based on the expected depth of utility lines.

{¶27} In *Boyd,* the court held that a violation of R.C. 3781.28(A) constitutes negligence per se. *Boyd,* 184 Ohio App.3d 16, 2009-Ohio-5039, 919 N.E.2d 283, at ¶ 24. The court reasoned that R.C. 3781.28(A) establishes a positive and definitive standard of care for excavators by requiring excavators to contact OUPS before excavating. *Id.* at ¶ 14. Courts can objectively discern violations of that duty. *Id.* The court found that the legislature codified R.C. 3781.28(A) to prevent underground utilities line damage and utility service disruption. *Id.* at ¶ 23.

{¶28} We agree with the *Boyd* court—a violation of the duty established by R.C. 3781.28(A) constitutes negligence per se. J.K. Meurer violated that duty when it failed to contact OUPS before it excavated the Burnett Driveway and damaged the utility line. Accordingly, J.K. Meurer's violation of R.C. 3781.28(A) satisfies the duty and breach elements of negligence.

### 2. **Causation**

{¶29} J.K. Meurer asserts that Cincinnati Bell failed to prove that J.K. Meurer caused the damage to Cincinnati Bell's utility lines.

{¶30} A defendant is liable under a theory of negligence only for damages caused by a breach of its duty. *Hester v. Dwivedi*, 89 Ohio St.3d 575, 583, 733 N.E.2d 1161 (2000). Specifically, the defendant's conduct or omission must be both the actual cause and proximate cause of the harm. *Walls v. Durani,* 1st Dist. Hamilton No. C-200167, 2021-Ohio-4329, ¶ 7.

{¶31} The standard test for actual causation is a "but for" test. *Anderson v. St. Francis St. George Hosp.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996). Accordingly, J.K. Meurer's conduct is the actual cause of the damage if the damage would not have occurred but for J.K. Meurer's conduct. *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 12, citing *Anderson* at 84-85.

9

{¶32} Next, J.K. Meurer's conduct must be the proximate cause of the damage. Proximate causation means "some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered." *Queen City Terminals v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 618, 653 N.E.2d 661 (1995), quoting Keeton, Dobbs, Keeton, & Owen, *Prosser and Keeton on the Law of Torts*, Section 41, 263 (5th Ed.1984). The harm must be foreseeable, meaning the harm was the natural and probable consequence of the act. *Mussivand*, 45 Ohio St.3d at 321, 544 N.E.2d 265.

{¶33} The trial court found that the costs of repairing the damage to the utility lines resulted from J.K. Meurer's negligence. J.K. Meurer contends that proof of causation requires expert testimony due to the use of machinery and Cincinnati's regulation of underground utility lines. Expert testimony is necessary to prove "causation between a plaintiff's injuries and the defendant's conduct" when the issues of causation involve a scientific inquiry. *Clough v. Watkins*, 4th Dist. Washington No. 19CA20, 2020-Ohio-3446, ¶ 32, citing *Darnell v. Eastman*, 23 Ohio St.2d 13, 261 N.E.2d 114 (1970), syllabus. But when "the cause and effect relationship is 'so apparent as to be matters of common knowledge,' then expert testimony is unnecessary." *Clough* at ¶ 32, citing *Darnell* at syllabus.

{¶34} We find that the cause-and-effect relationship between J.K. Meurer's conduct and the damage to Cincinnati Bell's underground utilities is "so apparent" that it requires no expert testimony. The testimony and documentary evidence support the trial court's conclusion that J.K. Meurer's negligence was the actual cause of the damage to Cincinnati Bell's utility lines. Cincinnati Bell presented testimony that the company was able to identify where the underground cables were located on Burnett Avenue and mark those locations. Cincinnati Bell introduced a

diagram from its database identifying the location of cables buried under Burnett Avenue. J.K. Meurer employees testified that the company took no precautionary steps before excavating and subsequently damaging underground utility cables in the course of its excavation. The damage to Cincinnati Bell's underground utility cables was foreseeable.

{¶35} Therefore, the trial court's determination that J.K. Meurer's conduct actually and proximately caused the damage to Cincinnati Bell's utility lines was not against the manifest weight of the evidence.

### 3. **Damages**

{¶36} Finally, J.K. Meurer challenges the trial court's damages finding. The court explained that Cincinnati Bell "retained a third party to repair the line and the driveway, incurring expenses totaling $10,393.73." J.K. Meurer argues that Cincinnati Bell failed to present evidence that the repair costs were reasonable or necessary, or that the costs were for the damage to its utility line on Burnett Avenue. We disagree.

{¶37} The purpose of awarding damages is to make an injured party whole. *MCI Communications Servs. v. Barrett Paving Materials, Inc.,* 1st Dist. Hamilton No. C-100806, 2012-Ohio-1700, ¶ 14, citing *Pryor v. Webber*, 23 Ohio St.2d 104, 263 N.E.2d 235 (1970), paragraph one of the syllabus. Damages include both direct and indirect costs. *Ohio Edison Co. v. Royer*, 2018-Ohio-75, 92 N.E.3d 912, ¶ 28 (9th Dist.). A utility company may be awarded direct and indirect costs " 'when the accuracy of the costs is reasonably established and the indirect costs are calculated in accordance with the accounting principles mandated by [the Public Utility Commission of Ohio].' " *Id.*, citing *State Edison Co. v. Roman*, 9th Dist. Lorain No. 97CA006735, 1998 Ohio App. LEXIS 4320, *4-5 (Sept. 16, 1998).

11

{¶38} Cincinnati Bell presented testimony that replacing the damaged utility line was necessary "because it was paved over." Cincinnati Bell presented an itemized invoice to show the material, labor, and subcontractor costs for the repairs. Further, Paolucci, the head of Cincinnati Bell's accounting department, testified that the invoice was prepared under the rules established by the Public Utility Commission of Ohio. According to Paolucci and Hickman, the damage bill and invoice reflected the costs tracked throughout Cincinnati Bell's system related to repairing the damaged utility lines on Burnett Avenue. Paolucci testified that Cincinnati Bell hired a subcontractor to repair the utility line. Further, Paolucci testified that in-network managers approved all third-party costs related to the repairs. Considering this evidence, the costs were reasonably established and consistent with the trial court's conclusion that Cincinnati Bell incurred $10,393.73 in damages.

{¶39} In light of the testimony and documentary evidence presented at trial, the lower court's judgment was not against the manifest weight of the evidence. We overrule J.K. Meurer's first assignment of error.

## C. **Directed Verdict**

{¶40} In its second assignment of error, J.K. Meurer contends the trial court erred by not granting its motion for a directed verdict. This court reviews a trial court's decision to deny a motion for a directed verdict de novo. *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 22, citing *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4. A directed verdict is appropriate when, after construing the evidence most strongly in favor of the nonmoving party, "reasonable minds could come to but one conclusion," that no evidence of substantive probative value exists in favor of the nonmoving party and that the nonmoving party failed to adduce any evidence on the

essential elements of the claim. *White* at ¶ 22, citing *Goodyear* at ¶ 3, quoting Civ.R. 50(A)(4).

{¶41}  J.K. Meurer argues that Cincinnati Bell presented no evidence of a breach of duty, or that any negligence proximately caused Cincinnati Bell's damaged utility lines. But as discussed above, Cincinnati Bell proved that J.K. Meurer excavated the Burnett Driveway as defined in R.C. 3781.25(I) without notifying OUPS, damaged a utility line, and proximately caused Cincinnati Bell's damages. The trial court appropriately denied J.K. Meurer's motion for a directed verdict. J.K. Meurer's second assignment of error is overruled.

### III.  Conclusion

{¶42}  The evidence produced at trial supported the trial court's denial of J.K. Meurer's motion for a directed verdict and the court's award of $10,393.73 to Cincinnati Bell. We therefore overrule J.K. Meurer's two assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.